UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
KAREN AHN, KWESI CAMERON, CORNELIA
CODY, CHRIS DISTASIO, PAT GARBARINI,
MANUEL ALFREDO GARZON, MELISSA
GRIGG, MARIA S. HERNANDEZ, CARI
JACKSON, JAN C. KRAUS, NERIDA
LANGSTON, GAIL MACK, MARTA MONTSENY,
MAURICIO NIEBLA, JAN ORZECK, SUE
MYUNG PARK, DELZA PEREIRA, WENDY
PIERSON, CAROL PORTEOUS-FALL, MICHELE
PRIDMORE, MARISA RINDONE, TOM
SAETTEL, BERNARDO SARAVIA, BRUNO
TARAZONA, ANA TEJADA, MARCO VILLAR,
EDITH WEINBERG and SARALYN WILSON,

    Plaintiffs,

  -against-

INKWELL PUBLISHING SOLUTIONS, INC.,
ISREAL LUZUNARIS, PATRICIA COOKE,
JANE DOES 1-5 and JOHN DOES 1-5,

    Defendants.
------------------------------------------------------------X

**MEMORANDUM and ORDER**

10 Civ. 8726 (KNF)

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

  On January 31, 2012, a telephonic conference was held with counsel to the plaintiffs and counsel to defendant Patricia Cooke ("Cooke"). During the conference, the Court inquired, <u>inter alia</u>, whether Cooke, as president of defendant Inkwell Publishing Solutions, Inc. ("Inkwell"), has the authority to enter into a consent judgment on Inkwell's behalf, inasmuch as the plaintiffs and Cooke had presented such a judgment to the Court for entry.

  On February 14, 2012, the plaintiffs and Cooke submitted a joint writing to the Court contending that Cooke possesses the "implied" authority to enter into a consent judgment on behalf of Inkwell. In their joint writing, the parties maintain that Cooke has "entered into a variety of contracts on behalf of Inkwell, responded to claims and lawsuits, and has prepared tax filings" on behalf of Inkwell. According to the parties, as a consequence, "Ms. Cooke has continuously established that she has the authority to make unilateral decision on behalf of Inkwell."

However, the assertion made, in the parties' February 14, 2012 joint writing, respecting Cooke's "unilateral" decision-making authority, does not jibe with the position taken by the parties in their Joint Pre-Trial Order, Docket Entry No. 19. In that document, the parties stipulate that "[Isreal] Luzunaris ("Luzunaris") [Inkwell's chief executive officer and treasurer] and Cooke shared in major decisions, which they generally made in informal meetings between the two of them." That Cooke and Luzunaris exercised joint decision-making authority respecting "major decisions" is corroborated by Article II of the "Principal Shareholders' Agreement Inkwell Publishing Solutions, Inc. ("Shareholders' Agreement"), Docket Entry No. 33, which states: "[a]ll corporate action shall require the unanimous consent of both the Board of Directors and the PRINCIPAL SHAREHOLDERS. Any acts taken or agreements entered into by the Corporation without such consent shall be void and not binding upon the Corporation."[1] In addition, in her Pre-trial Memorandum, Docket Entry No. 32, Cooke contends that, "[f]rom Inkwell's inception, the demarcation of roles between Ms. Cooke and Mr. Luzunaris was clear . . . Ms. Cooke focused on the editorial and marketing . . .[and] Mr. Luzunaris managed all of the finances of Inkwell." The assertions in the Joint Pre-Trial Order, as corroborated by the Shareholders' Agreement, and Cooke's Pre-Trial Memorandum make suspect the claim that Cooke had unilateral decision-making authority respecting Inkwell, particularly as it relates to "major decisions" such as entering into a consent judgment on Inkwell's behalf.

Furthermore, the case law to which the parties made citation in their February 14, 2012 joint writing provides little support for their contention that Cooke has the authority to enter into a consent judgment on behalf of Inkwell and thereby make it liable to the plaintiffs for the damages they seek, based solely on her status as Inkwell's president. For example, the parties cite Chambers v.

---

[1] The preamble to the Shareholders' Agreement identifies Cooke and Luzunaris as the "PRINCIPAL SHAREHOLDERS." Through Article III of the Shareholders' Agreement, the Principal Shareholders agreed that the corporation's Board of Directors will have two members and, further, that as long as Cooke and Luzunaris are the corporation's Principal Shareholders, each would be elected to the Board of Directors.

Lancaster, 160 N.Y. 342 (1899), for the proposition that "[t]he scope of the authority conferred by the corporation upon its president . . . may be implied from the power he was accustomed to exercise without the dissent of the company and with its acquiescence." Id. at 349.  In the instant case, the parties' reliance on this proposition is misplaced.  That is so because the statements made by the parties in their Joint Pre-Trial Order, and the arguments urged by Cooke through her Pre-Trial Memorandum – that Cooke controlled editorial and marketing matters, while Luzunaris handled the corporation's financial matters – undermine their contention in the February 14, 2012 joint writing, that Cooke has implied authority to enter into a consent judgment on Inkwell's behalf, as that is a matter which has financial implications for the corporation and is unrelated to the editorial and marketing matters over which Cooke usually exercised power as Inkwell's president.  The parties' reliance on Second Nat'l Bank v. Pottier & Stymus Mfg. Co., 2 N.Y.S. 644 (N.Y. Super. Ct. 1888), is to no avail for the same reason.  Furthermore, as the Second Circuit Court of Appeals explained in Pettit v. Doeskin Prods., Inc., 270 F.2d 95 (2d Cir. 1959), to which the parties also make citation, a corporate officer's implied authority to act on behalf of a corporation exists only as to matters that are usually or ordinarily undertaken by the officer in the normal course of that officer's corporate activities.  See id. at 99.  Cooke's consent to the entry of a judgment against Inkwell for $216,704 (exclusive of interest), in light of the limited scope of her portfolio as Inkwell's president: managing editorial and marketing matters, could reasonably be characterized as an unusual or extraordinary undertaking for her, and this militates against a finding that Cooke has implied authority to consent, on Inkwell's behalf, to the entry of a judgment against it.

      For the reasons set forth above, the Court is not persuaded, based on the record before it, that Cooke possesses the implied authority to consent to the entry of a judgment against Inkwell, as she

and the plaintiffs contend. Accordingly, the Court is constrained to deny the parties' request that it endorse the consent judgment and direct its entry by the Clerk of Court.

Dated: New York, New York
       March 29, 2012

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

-4-